(173 App. Div. 605)

In re DOBBS.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. ATTORNEY AND CLIENT ⬅️44(2)—MISCONDUCT—SUSPENSION.

An attorney's obligation to his clients requires him to keep their money entirely separate from his own, and any appropriation of such money to other purposes is misconduct warranting suspension.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 56; Dec. Dig. ⬅️44(2).]

2. ATTORNEY AND CLIENT ⬅️44(2)—MISCONDUCT—SUSPENSION.

Where an attorney mingled his client's money with his own and refused to account therefor, claiming a right to it for disbursements made, the testimony showing that, at the time he made an alleged tender and

at all times thereafter, he had not the money available on deposit, he was guilty of misconduct requiring suspension.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 56; Dec. Dig. ☞44(2).]

Application for the punishment of Willoughby B. Dobbs, an attorney and counselor at law, for professional misconduct.   Respondent suspended.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and SMITH, JJ.

Einar Chrystie, of New York City (Philip J. McCook, of New York City, of counsel), for petitioner.

Henry K. Davis, of New York City, for respondent.

CLARKE, P. J.   The respondent was admitted to practice at the bar of this state in January, 1897.   The petition alleges, in substance, that the respondent, as attorney for the contestants of the probate of the will of Anna M. Clarke, deceased, under an agreement whereby he was to receive a contingent fee of 25 per cent., settled the claim of his clients for $2,375, and that he has paid to his clients only the sum of $375, converting the balance of said sum to his own use.   The learned official referee, after hearing had before him, has reported that the charge of professional misconduct against the respondent has been sustained.

The respondent in 1911 was retained by one Maurice Fitzgerald, on behalf of himself, his two brothers, and three sisters, to contest the probate of the will of Anna M. Clarke, deceased.   The respondent's employment was subsequently ratified by the brothers and sisters; the agreement being that respondent should be compensated on the basis of 25 per cent. of any recovery.   In March, 1911, the respondent filed objections and answer to the petition for probate of the said will, and the issues thus raised came on for hearing in the Surrogate's Court on June 10, 1910.   On August 6, 1910, the surrogate rendered a decision, in which he directed a trial of the issues of fact raised by said contest by a jury in the Supreme Court.

On August 12, 1910, Maurice Fitzgerald, entered into an agreement with the respondent, which, although disputed, the referee has found was on behalf of himself and his brothers and sisters, whereby the respondent's compensation for taking the case into the Supreme Court should be on the 50 per cent. basis, as evidenced by the following retainer:

"It is understood and agreed that, if Mr. Dobbs proceeds with the trial of the Clarke will case in the Supreme Court and advances, as heretofore, all necessary disbursements, he may retain half of any amounts recovered by the suit, settlement, or otherwise, and I and my brothers and sisters will pay to him out of any money coming to us all the sums so expended by him, and he may retain in addition thereto all court costs, if any."

After two trials in the Supreme Court, resulting in disagreements, in April, 1911, terms of settlement were agreed upon with the legatee named in the will, and it is conceded that the respondent thereafter

received from the legatee for the account of his clients the sum of $2,375.

The respondent's statement of account, as set up in his amended answer, is as follows:

| | | |
|---|---:|---:|
| Amount received | | $2,375.00 |
| Disbursements | | 420.00 |
| | | |
| Balance | | $1,955.00 |
| One-half thereof, attorney's compensation as agreed | | 977.50 |
| | | |
| Balance for distribution | | $ 977.50 |
| Paid Maurice Fitzgerald | $225.00 | |
| Bella Fitzgerald | 200.00 | |
| Nora Thielbahr | 175.00 | |
| May Denton | 36.00 | 636.00 |
| | | |
| Balance in hands of respondent | | $ 341.50 |

The respondent concedes that the item "May Denton, $36.00," should be reduced to $26.60, leaving a balance in his hands, for which he should account, of $350.90. The respondent alleged in his answer, and testified on the hearing before the referee, that he duly tendered the sum of $341.50, the balance due under his account as stated, to Maurice Fitzgerald for distribution, and that Fitzgerald refused to accept the same, insisting that the respondent pay $450 to his brothers and sisters in Ireland, $200 to his sister May Denton, and to himself and wife $100 each, which the respondent refused to do.

The issues raised before the learned referee involved the terms of the retainer, the amounts distributed to or for the account of the respective claimants, and the sum charged by the respondent as disbursements incurred in the course of the litigation. The referee has found that the maximum sum to which the respondent was entitled to credit himself by way of disbursements did not exceed $295, and stated the respondent's account with the contestant as follows:

| | | |
|---|---:|---:|
| Amount received | | $2,375.00 |
| Disbursements | | 295.00 |
| | | |
| Balance | | 2,080.00 |
| Attorney's fee, 50% | | 1,040.00 |
| | | |
| Balance for distribution | | $1,040.00 |
| Paid Maurice Fitzgerald | $225.00 | |
| " Bella Fitzgerald | 200.00 | |
| " Nora Thielbahr | 175.00 | |
| " May Denton | 26.60 | 626.60 |
| | | |
| Balance in hands of respondent | | $ 413.40 |

The balance thus found exceeds the sum of $341.50, which the respondent claims to have tendered to Maurice Fitzgerald, by $71.90.

In support of the alleged disbursements of $420, the respondent was unable to present a single voucher. He testified that he believed all the said disbursements were made in cash, but he kept no petty cash book in which entries were made of such expenditures. Upon cross-

examination, he was unable to positively recall items amounting to more than $120, which he stated to be as follows:

Minutes of the surrogate's trial.................................$35.00
Minutes of first jury trial.......................................... 30.00
Process servers, second jury trial................................. 25.00
Copy of records, exhibits, etc., preliminary to proposed third trial...... 30.00

Aside from these expenditures, the respondent claims the bulk of the disbursements to have been made for witness' fees, mileage, and lunches. When pressed on cross-examination for the names of the witnesses to whom such payments were made, the respondent testified, "I would not say that I paid any of them, except Father Bernard and Dr. McGlade;" and subsequently, "I will say that I paid Mrs. Richardson on several occasions." Both Dr. McGlade and Mrs. Richardson, as well as two other witnesses who appeared on behalf of the contestants in the probate proceedings, testified that the respondent had not paid them anything for witness fees or mileage, nor had he bought any lunches for them. While the respondent claims that he believes the account shows an understatement rather than an overstatement of the amounts expended, he produced neither documentary evidence nor witnesses to corroborate his statements. However substantial the disbursements made by the respondent may have been, his clients were entitled to have their share of the sum received in settlement fixed upon a basis more certain than the respondent's estimate of the moneys which he disbursed.

[1] Moreover, the respondent admitted that he used the money received in settlement as if it was his own, depositing a part of it in his general account, which at times was insufficient to meet the amount due to his clients. While the respondent claims that he was at all times in a position to pay the amounts due, his obligation to his clients required him to keep their money entirely separate from his own. As said in Matter of Cohn, 141 App. Div. 511, 126 N. Y. Supp. 218:

"An attorney * * * is under the strictest obligation to keep it separate from all other moneys in his hands. Any appropriation of the money for any purposes other than to pay to his client is a violation of his personal obligation to his client, and requires that he be disciplined."

[2] The respondent not only mingled his clients' money with his own, but also used it for his own purposes, and refused to account for and pay it over to his clients, asserting his right to it under the guise of moneys disbursed on their account. His testimony was not frank nor honest. He exaggerated his disbursements, and gave unbelievable evidence as to a tender.

The learned referee reports that the testimony "on the question of a tender by the respondent of $341.50 does not warrant a conclusion that respondent had the actual money in his possession and made a genuine tender thereof, as he claims. * * * The respondent's bank account, which is in evidence, indicates with great certainty that at no time during the intervening period down to date has the money been on deposit at any one time to respondent's account and available for

use by him." With the referee's conclusion that the charge of professional misconduct has been sustained we agree.

The respondent should be suspended for one year, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon. Settle order on notice. All concur.